**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**MITCHELL H. COHEN U.S. COURTHOUSE**
401 Market Street
P.O. BOX 2067
CAMDEN, NJ 08101-2067

**Andrew B. Altenburg, Jr.**  (856) 361-2320
**U.S. BANKRUPTCY JUDGE**

September 4, 2019

| Robert A. Loefflad, Esq. | Jennifer R. Gorchow, Esq. | Francis J. Ballak, Esq. |
| --- | --- | --- |
| Ford, Flower, | Office of the Chapter 13 | Goldenberg, Mackler, Sayegh, |
| Hasbrouck & King | Standing Trustee | Mintz, Pfeffer, Bonchi & Gill |
| P.O. Box 405 | 535 Route 38 | 660 New Road, Suite No. 1-A |
| Linwood, NJ 08221 | Suite 580 | Northfield, New Jersey 08225 |
| | Cherry Hill, NJ 08002 | |

    **RE:  In re Joseph. L. Parisi**
           **Bankr. Case No. 18-25689-ABA**

Dear Mr. Loefflad, Ms. Gorchow, and Mr. Ballak:

      Before the court is the confirmation of the most recent chapter 13 plan filed by Joseph L. Parisi (the "Debtor") on May 17, 2019 (the "Plan"), (Doc. No. 41) and Pleasantville Investment LLC's ("PI") objection thereto. (Doc. No. 44). After a plenary hearing on July 24, 2019 (the "Plenary Hearing"), at which time the court took testimony, the court gave the parties one week to resolve the objection and if no resolution could be reached, the court instructed the parties to file post-hearing submissions. The court is disheartened that the parties were unable to amicably resolve the matter as evidenced by their filed post-hearing submissions[1] to wit: the Debtor's Certification in Support of Confirmation and a Brief (Doc. Nos. 46 and 47); the Chapter 13 Trustee's letter recommending confirmation (Doc. No. 50); and PI's continuing objection to confirmation (Doc. No. 52). Although not authorized by the court, the Debtor filed a reply to PI's objection. (Doc. No. 54). As a result of the submissions, this matter is now ripe for disposition. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. For the reasons that follow, confirmation of the Plan is GRANTED, however, with conditions.

---

[1] The court notes that both the Debtor and PI submitted information in their post-hearing submissions that went outside the scope of what was raised at the hearing. *See United States v. Schiff*, 538 F. Supp. 2d 818, 841 (D.N.J. 2008), *aff'd*, 602 F.3d 152 (3d Cir. 2010) ("to the extent that the Government seeks to raise new arguments, to make a new factual proffer, or to advance a new legal theory in the post-hearing submission, such portions are beyond the scope of the ordered briefing. A post-hearing brief is not the place for new theories. This is not arbitrary, but rather essential for a fair hearing process."); *see also Bender v. Hargrave*, No. AP 15-02450-ABA, 2016 WL 1147361, at *2, n.6 (Bankr. D.N.J. Mar. 9, 2016). Accordingly, in making its decision the court will not consider any information contained therein that was not produced as admissible evidence at the hearing.

Some background is necessary. This matter was originally brought before the court through the Debtor's original Chapter 13 plan filed August 6, 2018. (Doc. No. 2). On August 29, 2018, PI, a creditor that holds tax liens on two properties of the Debtor, filed an objection to confirmation of the plan. (Doc. No. 16). Thereafter, the Debtor filed two modified plans (Doc. Nos. 31 and 32), to which PI again filed an objection. (Doc. No. 33). The Debtor filed another plan on April 22, 2019. (Doc. No. 36). A confirmation hearing was held on April 24, 2019 (the "Original Confirmation Hearing") at which time the court took admissible testimony. Ultimately, the court denied confirmation. (Doc. No. 38).

Then, the Debtor filed his current Plan to which PI again filed an objection. (Doc. No. 44). The Debtor's Plan proposes to fund his bankruptcy by paying $3,000 a month for 60 months. Additionally, because the monthly payments are not sufficient to satisfy all the claims under the Plan, the Debtor proposes a lump sum payment of $300,000 on or before December 31, 2019, through the sale of either a vacant lot, located at 6800 Washington Ave, Egg Harbor Township, New Jersey (the "Vacant Lot"), *or* the Debtor's residence, located at 280 Steelmanville Road, Egg Harbor Township, New Jersey (the "Residence"). The Plenary Hearing was held with the Debtor, PI, the Chapter 13 Trustee and witnesses participating.

PI's objection centers on the feasibility of the Plan. In addition to the Residence and the Vacant Lot, Debtor owns two other properties, a gas station, located at 900 N. Main St., Pleasantville, New Jersey (the "Gas Station"), and a motor vehicle repair shop, located at 910 N. Main St., Pleasantville, New Jersey (the "Repair Shop"). These are the properties that PI holds tax liens against. The Debtor is motivated to sell either the Vacant Lot or the Residence to satisfy PI's liens on the properties because the Gas Station and the Repair Shop are the Debtor's livelihood. Thus, if PI were to foreclose on those properties, the Debtor would lose his businesses in addition to the properties themselves.

The proof of claim deadline in this case has long since passed. PI filed Claim #1-1 in the *total* amount of $132,782.94 which claim is secured by its tax lien against the Gas Station property. PI also filed Claim #2-1 in the *total* amount of $133,223.99[2] which claim is secured by its tax lien against the Repair Shop property.

In his post-Plenary Hearing submission, the Debtor consented to a dismissal of his case if the Residence is not sold by the "drop-dead" sale date of December 31, 2019 and/or if the Debtor fails to timely pay any real estate tax payment or other municipal charge within 15 days of the due date for the Residence, the Gas Station and/or the Repair Shop. (Doc. No. 46, ¶¶ 42 and 43). Of course, the Debtor must understand that his Plan actually provides *for a lump sum payment of $300,000 by December 31, 2019*. While a proposed drop-dead for a sale is fine, and obviously will go hand-in-hand with the Plan requirement, the Debtor cannot ignore and must understand that an actual *payment* is required by that date – not just a "sale".

The issue before the court is whether the Debtor's Plan is feasible under 11 U.S.C. § 1325. "Chapter 13 in the Bankruptcy Code specifically requires feasibility as a precondition to plan confirmation." *In re Buccolo*, 397 B.R. 527, 530 (Bankr. D.N.J. 2008) (citing 11 U.S.C.

---

[2] It is important to note that PI's claims include interest over the *entire life* of the Debtor's Plan. Thus, if the claims are paid off earlier, then the total amount due will be less.

§ 1325(a)(6)). Indeed, section 1325(a)(6) provides that the court may only confirm a plan if, among other requirements, a debtor shows they "will be able to make all payments under the plan and to comply with the plan." The "Chapter 13 debtor bears the burden of persuasion on whether a proposed plan meets the elements required for confirmation pursuant to § 1325." *In re Eckert*, 485 B.R. 77, 80 (Bankr. M.D. Pa. 2013). "Feasibility is a question of fact." *In re Bernardes*, 267 B.R. 690, 695 (Bankr. D.N.J. 2001). However, "[t]he Debtor does not need to prove that the Plan is guaranteed to be successful." *In re Drago*, No. 15-15615 (JNP), 2015 WL 9777745, at *2 (Bankr. D.N.J. Dec. 18, 2015). Instead, the court "must make a factual determination as to whether the plan has a 'reasonable likelihood of success.'" *Id.* (citing *In re Buccolo*, 397 B.R. at 530). In reality:

> All Chapter 13 plans involve some degree of speculation; [so] debtors need not be able to guarantee success to satisfy the feasibility requirement. *[In re Hult*, 04.1 I.B.C.R. 18, 20 (Bankr. D. Idaho 2004);] *See also First Nat'l Bank of Boston v. Fantasia (In re Fantasia)*, 211 B.R. 420, 423 (B.A.P. 1st Cir. 1997) ("To satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan.").

*In re Parker*, No. 04-40037, 2005 WL 4705288, at *3 (Bankr. D. Idaho Feb. 9, 2005).

*Are the monthly Plan payments of $3,000 feasible?* At the Plenary Hearing, the court heard testimony from the Debtor's certified public accountant that, based on the Debtor's income and expenses from January to July of 2019, the Debtor is comfortably able to afford the $3,000 per month plan payments.[3] The Debtor also testified at the Plenary Hearing and confirmed his ability to make monthly Plan payments. The court also found the Debtor to be extremely motivated to make his plan succeed. Based on the testimony of the Debtor, the testimony of the accountant, and the Trustee's acceptance of the plan, the court finds the Debtor met his burden that the monthly Plan payments of $3,000 are feasible.

However, because the proposed Plan payments alone will not satisfy all claims provided for under the Plan, the Debtor's Plan also provides for a lump-sum payment of $300,000 by December 31, 2019 through the sale of the various properties. Indeed, section 1322(b)(8) allows a debtor's plan to "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." 11 U.S.C. §1322(b)(8). Thus, "Section 1322(b)(8) permits a debtor to convey or liquidate and pay over the proceeds of sale of *any* property of the estate or property of the debtor, such as exempt property, to the holder of a claim against the debtor in complete *or partial* satisfaction of the claim." 8 *Collier on Bankruptcy*, ¶ 1322.12 (16th ed. 2019) (emphasis added). Moreover, chapter 13 plans are routinely confirmed where a "debtor proposes to pay off that claim within a reasonable amount of time through the sale of the real property". *In re Crawford*, No. BR 11-24158-SBB, 2012 WL 930281, at *7 (Bankr. D. Colo. Mar. 19, 2012); *see also In re Valdez*, No. 13-06-12431 MA, 2007 WL 1464439, at *3 (Bankr. D.N.M. May 17, 2007).

---

[3] The court notes that the Debtor's attorney failed to move any of his exhibits into evidence at the Plenary Hearing. Nevertheless, the court heard credible testimony from the witnesses that was not satisfactorily contradicted and considers that testimony in this decision.

*Is a lump-sum payment of $300,000 by December 31, 2019 through the sale of the various properties feasible?* At the Plenary Hearing, Debtor's counsel failed to move any exhibits into evidence making it more difficult to render this decision. Nevertheless, in making this decision about the Debtor's current Plan, the court is not precluded from considering evidence presented at the hearing. *See e.g. In re Acequia, Inc.*, 787 F.2d 1352, 1358–59 (9th Cir. 1986); *In re Blumer*, 95 B.R. 143, 146 (B.A.P. 9th Cir. 1988); *In re Gulfstar Indus., Inc.*, 236 B.R. 75, 78 (M.D. Fla. 1999). *In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012); *In re Derosa-Grund*, 567 B.R. 773, 780 n.2 (Bankr. S.D. Tex. 2017). During the Original Confirmation Hearing, the Debtor presented testimony that the combined value of the Gas Station and Repair Shop properties was at least $725,000. And while the Debtor initially proffered incorrect information about the equity in the Residence, after the court itself questioned the Debtor, and further testimony, the court concludes that there is enough equity in the Residence to assist the Debtor in achieving the lump-sum payment of $300,000 by December 31, 2019.[4] In fact, it appears that *all* of the Debtor's secured creditors have significant equity cushions in all properties—including PI with the Gas Station and Repair Shop. The Debtor's values were not contradicted and while Debtor's counsel failed to move any exhibits into evidence, the court can rely on the Debtor's estimate of what the value of his properties are, especially here where the value was uncontradicted. *See In re Brown*, 244 B.R. 603 (Bankr. W.D. Va. 2000):

> It is generally, if not universally, accepted that an owner of property may testify as to his or her opinion of such property's value without demonstrating any additional qualifications to give opinion evidence. *Justice v. Pennzoil Co.,* 598 F.2d 1339, 1344 (4th Cir. 1979); *Kestenbaum v. Falstaff Brewing Corp.,* 514 F.2d 690 (5th Cir. 1975); *Neff v. Kehoe,* 708 F.2d 639 (11th Cir. 1983); *Haynes v. Glenn,* 197 Va. 746, 91 S.E.2d 433 (1956). "In the absence of other evidence, the testimony of an owner may be conclusive, if it is credible." *In re Chelten–Stenton Seafood, Inc.,* 1989 WL 62106 (Bankr. E.D. Pa. 1989). In any event such testimony was received without objection and the Court is entitled to give it such weight as it determines appropriate. Federal Rule of Evidence 103(a)(1).

*Brown*, 244 B.R. at 611–12; *see also In re Abrahimzadeh*, 162 B.R. 676, 678 (Bankr. D.N.J. 1994). With the uncontradicted equity in the Residence and the Vacant Lot, the court concludes that the sale of those two properties could feasibly satisfy the Debtor's Plan obligation with regard to the lump-sum payment of $300,000.

The obvious question is, and what seems to be the focus of PI's objections, is whether a sale of the properties by December 31, 2019 in order to make the lump-sum payment is feasible. While PI has raised valid arguments about the lackluster efforts of the Debtor thus far, the Debtor has now offered his personal Residence, has retained the services of a realtor, and has self-imposed a reasonable drop-dead date with the failure to meet it, resulting in immediate dismissal of this

---

[4] There appears to be an inconsistency with the testimony provided and the Plan. The Plan provides selling *either* the Vacant Lot *or* the Residence, but based on Debtor's testimony, it does not appear that selling the Vacant Lot alone or even the Residence alone will produce the $300,000. Rather, it appears that a sale of *both* properties would be required to reach the $300,000 amount. Nevertheless, this may all be academic because, as set forth above, it is the *payment* of the $300,000 rather than the sale of the properties that is driving this Plan. As long as the $300,000 is paid by the drop-dead date, the court does not care if it is the Vacant Lot, the Residence, or both that is/are sold.

case. Thus, the Debtor has every incentive to comply with the sale and lump-sum requirement of the Plan. The fact that the Debtor's personal Residence and livelihood (the Gas Station and Repair Shop) are at stake convinces the court that sale of the properties and the lump-sum payment of $300,000 is feasible because the Debtor simply has too much to lose and has every incentive to make the Plan feasible. Also, due to the values in the Gas Station and Repair Shop, PI is adequately protected now and will be at least for the duration of the sale period of the properties. The Plan is reasonably likely to succeed because the Debtor is sufficiently motivated to sell the properties in a reasonable period of time and has taken steps to do so. The fact that there will be no harm to PI also favors a finding in favor of the Debtor.

In this case, the Debtor has submitted a budget supported by his expert's testimony that persuades the court that he should be able to make the payments proposed under the Plan. The Debtor's projected expense items are conservative and unremarkable. There is nothing apparent from the testimony that suggests he will be unsuccessful. The court also finds the Debtor to be sincerely motivated to keep his livelihood, sell the properties and complete his Plan. He has thus far made all payments required by his Plan while the case has been pending. PI is adequately protected and it is inconceivable how its equity cushion cannot be maintained during the pendency of the Plan especially since the Debtor has agreed to immediate dismissal of his case if he fails to timely pay taxes, other property charges, and/or plan payments. The Debtor has retained a realtor to sell the properties and has provided a reasonable "drop dead" remedy resulting in the immediate dismissal of his case if the lump-sum payment is not made—all valid factors to consider for feasibility. *See Crawford*, 2012 WL 930281, at *8; *Valdez*, 2007 WL 1464439, at *4; *In re Mastel*, Case No. 09–60784–13, 2010 WL 234971, at * 5-*6 (Bankr. D. Mont. Jan. 15, 2010); *In re Erickson*, 176 B.R. 753, 756–57 (Bankr. E.D. Pa. 1995); *In re Newton*, 161 B.R. 207, 217–18 (Bankr. D. Minn. 1993). Along with this, the Chapter 13 Trustee's recommends confirmation and the court gives this recommendation considerable weight. "The primary goal of a Chapter 13 case is the confirmation and completion of a reorganization plan, which results in the discharge of the Chapter 13 debtor's debts," *In re Michael*, 699 F.3d 305, 306, n.1 (3d Cir. 2012). All things considered, the court is putting its faith in the Debtor and finds that the Debtor has shown he has a reasonable likelihood of success. The Debtor's' Plan therefore satisfies the requirements of § 1325(a)(6).

Two remaining issues must be addressed. First, it has been suggested that PI must be paid off in full upon the sale of the properties. It has also been suggested that PI cannot be paid off in full. While it seems to the court that the prompt full satisfaction of PI's claims would be in the best interests of *all* involved, the parties chose not to reach an agreement on this issue so the court will clarify. In short, there is no requirement that PI *must* be paid off in full upon the sale of the Residence and/or the Vacant Lot. PI does not have a lien against those properties so PI's claims need not be satisfied in full at the time of sale. In addition, because section 1322(b)(8) specifically permits the Debtor to sell any property and use the proceeds to pay PI in *partial* satisfaction of the claim, the proposed lump-sum payment of $300,000 can be used to satisfy the claim of PI in accordance with the Chapter 13 Trustee's distribution scheme—likely resulting in only a partial payment of PI's claim from the lump-sum payment and payment of its remaining claim over the life of the Plan. Section 1325 allows the treatment of PI's claim in this way. More importantly, under that scheme, the Chapter 13 Trustee has confirmed in her submission (Doc. No. 50), that the

Plan is still feasible. As noted above, the court relies on the Chapter 13 Trustee's recommendation of confirmation.

Finally, in its post-Plenary Hearing submission, PI asks the court, in the event of default by the Debtor, to grant it prospective relief in future cases. The Debtor has self-imposed strict requirements for the success of his case. The Debtor has consented to immediate dismissal of his case if the lump-sum payment of $300,000 from the sale of the properties is not made by the "drop-dead" sale date of December 31, 2019 and/or if the Debtor fails to timely pay any real estate tax payment or other municipal charge within 15 days of the due date for the Residence, the Gas Station and/or the Repair Shop. In addition, the court will allow a Certification of Default to be filed if the Debtor misses a Plan payment, as that will be evidence that the Plan is no longer feasible. PI, is without question, adequately protected and its equity cushion will be maintained. Prospective relief in this case is not warranted. Of course, that does not prevent PI from seeking prospective relief in another case if this case fails as issues of feasibility, and perhaps good faith, will certainly arise in future cases.

The court will confirm the Plan. The Chapter 13 Trustee will please submit an appropriate confirmation order. When doing so, in addition to the usual language contained in a confirmation order, please specifically include the following conditions of confirmation:

1) The Debtor making a lump-sum payment of $300,000 by December 31, 2019 from the sale of the Residence and/or Vacant Lot (if the property or properties sell for more than $300,000, all proceeds must be turned over to the Chapter 13 Trustee);

2) Any sale must be properly noticed and approved by the court;

3) If applicable, the Debtor shall become current on all Trustee payments within 14 days of the date of the confirmation order;

4) If applicable, the Debtor shall become current on all post-petition taxes and/or other charges against all of his properties within 14 days of the date of the Order;

5) The Debtor shall pay any Plan payment to the Trustee within 15 days of the due date and further pay any real estate tax payment or other municipal charge within 15 days of the due date for the Residence, the Vacant Lot, the Gas Station and/or the Repair Shop (the Debtor shall provide proof of payment to the trustee's office and counsel for Pleasantville Investment upon payment of same);

6) If any of the above conditions are not met, this bankruptcy case shall be dismissed upon the filing of a Certification of Default; and/or

7) A status hearing shall be scheduled for January 8, 2020, at 10:00 a.m.

      For all that, it must also be noted, that this case is over a year old, has a long history, has had several opportunities to succeed, and has delayed PI in enforcing its foreclosure rights. If the Debtor fails to satisfy the confirmation conditions, *NO FURTHER EXTENSIONS WILL BE GIVEN* and no modified plan will be considered (unless of course the parties agree to an extension). Simply put, the Debtor has only a few months to accomplish a tough task, but again, guarantee of success is not the requirement. The court is giving the Debtor the benefit of the doubt by relying on his representations that there is a reasonable likelihood of success because he will be able to comply with and make all payments under the Plan and otherwise comply with his post-confirmation obligations, and that he is sincere and driven to do so. The court truly hopes that the Debtor will be successful and is affording the Debtor this last opportunity because it prefers that a debtor reorganize rather than fail. However, failure to meet the conditions of confirmation, most self-imposed, will be evidence that the Debtor has no realistic prospect of reorganization.

      /s/ Andrew B. Altenburg, Jr.
      United States Bankruptcy Judge